IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMIE P.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 22-cv-00499 |
| v. | ) |
| | ) Honorable Beth W. Jantz |
| MARTIN J. O'MALLEY, | ) |
| Acting Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Jamie P.'s application for Disability Insurance Benefits ("DIB"). The Parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's request to reverse the Commissioner's final decision [dkt. 1, Compl.; dkt. 13, Pl.'s Br.; dkt 16, Pl.'s Reply Br.] is granted and the Commissioner's Motion for Summary Judgement [dkt. 14, Commissioner's Mot.; dkt. 15, Memo.] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.
[2] Pursuant to Federal Rule of Civil Procedure 25(d), Martin J. O'Malley has been substituted for his predecessor.

# BACKGROUND

## I. Procedural History

On April 10, 2019, Plaintiff completed her application for DIB, alleging disability since April 1, 2018. R. 170-71. The claim was denied initially on September 5, 2019, and upon reconsideration on April 7, 2020. R. 57-90. A hearing before an Administrative Law Judge ("ALJ") was held on January 26, 2021. R. 31-56. A Vocational Expert ("VE") and Plaintiff testified at the hearing. *Id.* Plaintiff's claim was denied by the ALJ on April 22, 2021. R. 10-30. The Appeals Council denied Plaintiff's request for review on November 26, 2021, leaving the ALJ's decision as the final decision of the Commissioner. R. 1-6.

## II. The ALJ's Decision

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. R. 10-30. The ALJ found at step one that Plaintiff had engaged in substantial gainful activity ("SGA") from her alleged onset date of April 1, 2018 through December 31, 2018, but had not engaged in SGA from January 1, 2019 on. R. 15-16. At step two, the ALJ concluded that Plaintiff had the following severe impairments: attention deficit hyperactive disorder ("ADHD"); major depressive disorder; post-traumatic stress disorder ("PTSD"); arthritis of the right wrist and elbow; bilateral carpal tunnel syndrome; trigger finger of the right ring finger; and a history of fibromyalgia. R. 16. The ALJ concluded at step three that her impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's listings of impairments. R. 16-18. Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work except that she: could occasionally climb ladders, ropes, or scaffolds; could frequently handle and finger bilaterally; could understand, remember, and carry out simple, routine, and repetitive instructions; and could not tolerate any interaction with the public. R. 18-23. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 23. At step five, the ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform, considering her age, education, work experience and RFC. R. 24. This led to the ALJ finding that Plaintiff was not disabled under the Social Security Act. R. 25.

**DISCUSSION**

**I.     Judicial Review**

Under the Social Security Act, a person is disabled if she is unable "to engage in any [SGA] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any SGA during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g); *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant

meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837; *see also Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## II. Analysis

Among other arguments, Plaintiff argues that the Commissioner's decision should be reversed because the ALJ erred in her analysis of Dr. Joseph Kut, MD's opinion. [Dkt. 13 at 2-5]. After a review of the record and the briefs submitted by the Parties, the Court agrees that the ALJ erred in her evaluation of the medical opinion of Dr. Kut. The ALJ's decision does not provide a sufficient explanation of her credibility determination so that the Court can follow her path of reasoning and ensure that substantial evidence supports the decision. Because this error alone warrants remand, the Court does not reach Plaintiff's additional arguments.

### A. Relevant Legal Principles

Because Plaintiff's claim was filed after March 27, 2017, opinion evidence is governed by 20 C.F.R. § 404.1520c. Under the regulation, the ALJ should not give "specific evidentiary weight, including controlling weight, to any medical opinion(s)…including those from [Plaintiff's own] medical sources." 20 C.F.R. § 404.1520c(a). In determining the persuasiveness of medical opinions, the "most important factors" an ALJ must consider are "supportability" and "consistency" with the record. 20 C.F.R. § 404.1520c(b)(2). The ALJ must explain how these factors were considered. *Id.*; *Jill L. v. O'Malley*, No. 21 C 4306, 2024 WL 735102, at *3 (N.D. Ill. Feb. 16, 2024). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion" and "consistency assesses how a medical opinion squares with other evidence in the record." *Robert J. L. v. O'Malley*, No. 20-CV-50444, 2024 WL 809091, at *2 (N.D. Ill. Feb. 27, 2024) (citations omitted). An ALJ need only "minimally articulate" her reasoning regarding the persuasiveness of the medical opinion.

4

*Desotelle v. Kijakazi*, No. 22-1602, 2023 WL 4146246, at *2 (7th Cir. June 23, 2023) (citation omitted).

    **B. The ALJ failed to minimally and thus sufficiently articulate her reasoning for finding the opinion of treating psychiatrist Dr. Joseph Kut, MD to be unpersuasive.**

Dr. Joseph Kut, MD saw Plaintiff quarterly, beginning as early as 2012. R. 586, 636. In April of 2019, Dr. Kut filled out a "Mental Impairment Questionnaire" (the "Questionnaire"), which opined that Plaintiff had several limitations (ranging from mild to marked) to her mental abilities, would be off task 21% or more in an 8-hour workday, and would be absent more than three times a month. R. 636-638. At the hearing, the VE testified that this would preclude Plaintiff from work. R. 54 (The ALJ asked the VE, "What are the tolerances for being off task?" The VE answered, "They're allowed to be off task up to 15% of the workday." The ALJ then asked, "What are the tolerances for absences?" The VE replied, "They're allowed to miss up to one and a half days a month."). But the ALJ found Dr. Kut's opinion to be "unpersuasive," as in the ALJ's view, it was "not consistent and not supported by the record." R. 22. As support for this conclusion, the ALJ stated that Plaintiff's "mental condition improves with treatment," and that her "mental exams are generally unremarkable; however the record also show[s] occasional anxious and depressed moods." *Id.* The ALJ provided no further support for her conclusion.

    The ALJ failed to build a logical bridge between the evidence and her conclusion that Dr. Kut's opinion was not consistent or supported by the record. First, the Court does not understand how the fact that Plaintiff's mental condition improves with treatment is inconsistent with Dr. Kut's opinion. Logically, a person's condition might improve, while still remaining severe enough to render them unable to work. *See Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce…"). As Plaintiff points out in her brief, there is indeed evidence from the Agency's own consultant that Plaintiff continued to have symptoms related to her mental conditions after Dr. Kut filled out the Questionnaire. [Dkt. 13 at 3-4 (citing r. 618-20)]. That Plaintiff's mental condition(s) might improve with treatment does not mean that Plaintiff could not have the limitations Dr. Kut opined to. From what the Court can see from the record at this point, "there is no unexplained inconsistency here*." Lambert v. Berryhill*, 896 F.3d 768, 774-75 (7th Cir. 2018) (finding that the ALJ's rationale for giving little weight to a medical opinion was inadequate, in

5

part because there was no unexplained inconsistency though the ALJ concluded that the opinion was inconsistent).

Even if there was an inconsistency, the ALJ failed to point to any evidence that allows the Court to understand how she came to the general conclusion that Plaintiff's conditions improved with treatment. Elsewhere in the decision, the ALJ cites to three records that supposedly show Plaintiff's improvement, but these citations do not shed light on her rationale. R. 20. Two of the cited records state that Plaintiff's ADHD responded well to medication. R. 572, 614. These records say nothing about the improvement of Plaintiff's other mental conditions, however, including her PTSD and major depressive disorder. The other cited record consists of Dr. Kut's treatment notes from 2020, which state that Plaintiff: was doing well; had a good relationship; was clean and sober; struggled with controlling cognitive distortions and negative thoughts; struggled with increased anxiety; and had difficulty going to the store. R. 658. These treatment notes report both positive *and* negative findings. Cherry-picking from mixed results to support a denial of benefits is impermissible. *See, e.g., Scott*, 647 F.3d at 740-41 ("Those notes show that although [the plaintiff] had improved with treatment, she nevertheless continued to frequently experience bouts of crying and feelings of paranoia. The ALJ was not permitted to cherry-pick from those mixed results to support a denial of benefits.") (internal quotation and citations omitted). Further, nothing in the treatment notes state that Plaintiff's conditions were treated or whether the positive findings were a result of treatment or some other factor, such as Plaintiff having a good day. *See Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) ("This cherry-picking is especially problematic where mental illness is at issue, for a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about [her] overall condition.") (internal quotations and citation omitted).

The ALJ's second rationale for finding Dr. Kut's opinion unsupported and inconsistent was that Plaintiff's mental exams were "generally unremarkable." R. 22. In this part of the decision, the ALJ again cited to no records to support her conclusion and the Court cannot understand how she came to it. *Id.* As the ALJ noted in another part of her decision, there were instances of normal findings at mental exams. R. 20 ("…mental exams generally show the claimant as cooperative with a full orientation, adequate grooming and no suicide or homicide ideations."). But a review of the record also shows several instances of seemingly abnormal mental findings from visits with multiple medical sources over the span of several years, including: suicidal ideation; feelings of

6

guilt/worthlessness; social withdrawal or isolation; appetite disturbance with weight change; panic attacks; anxiety; confusion; and difficulty concentrating. *See e.g.* r. 370, 373, 619, 670, 686. It is not for the Court to weigh the evidence or make conclusions about Plaintiff's mental exams. *See Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). But with no explanation from the ALJ about why abnormal findings were overcome by other evidence, the Court cannot understand how the ALJ reached her conclusion that Plaintiff's mental exams were "generally unremarkable." R. 22; *see Zurawski*, 245 F.3d at 889 (remand was required where the ALJ did not attempt to explain why the evidence on which she relied overcame other evidence in the record which appeared to favor the plaintiff). "ALJs are not permitted to cherry-pick evidence from the record to support their conclusions, without engaging with the evidence that weighs against their findings." *Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018). Here, the ALJ made no attempt to engage with the evidence that weighed against her conclusion that Plaintiff had unremarkable mental exams.

The ALJ failed to meet her burden to minimally and thus sufficiently articulate her reasoning for finding Dr. Kut's opinion unpersuasive. R. 22. She did not sufficiently explain how she considered the factors of supportability and consistency in such a way that the Court can trace her reasoning. The ALJ's conclusory finding that Dr. Kut's opinion was not supported and not consistent, with no adequate explanation, is not enough to build an accurate and logical bridge between the evidence and her decision. Thus, the case must be remanded. *See Diane S. v. Kijakazi*, No. 21-CV-1505, 2023 WL 8372040, at *4 (N.D. Ill. Dec. 4, 2023) ("The ALJ did not properly explain either of his reasons for discrediting the Statement, which strongly supported Plaintiff's claim of disability, and therefore the ALJ failed to "build an accurate and logical bridge between the evidence and the result [so as] to afford [Plaintiff] meaningful judicial review of the administrative findings," requiring remand.")

## CONCLUSION

For the foregoing reasons, Plaintiff's request to reverse the Commissioner's final decision [dkt. 1; dkt. 13; dkt 16] is granted and the Commissioner's Motion for Summary Judgement [dkt. 14; dkt. 15] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: March 1, 2024

_____
BETH W. JANTZ
United States Magistrate Judge